UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL ALAN COTE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No.   3:17cv95 (WWE) |
| | : |
| BERRYHILL, Acting Commissioner<br>Social Security,<br>    Defendant. | :<br>:<br>: |

**MEMORANDUM OF DECISION ON THE MOTION FOR ORDER REVERSING COMMISSIONER'S DECISION AND THE MOTION TO AFFIRM THE FINAL DECISION**

Plaintiff Daniel Cote challenges the denial of his application for Social Security disability benefits and requests reversal of the Commissioner's decision pursuant to sentence four of 42 U.S.C § 405(g). For the following reasons, plaintiff's motion for order reversing the Commissioner's decision will be granted to the extent that the matter will be remanded pursuant to sentence six of section 405(g);[1] defendant's motion to affirm the decision of the Commissioner will be denied.

**BACKGROUND**

The parties have filed statements of facts that detail plaintiff's medical history from November 12, 2008, prior to his disability onset, through August 25, 2015, prior to his disability onset date of September 14, 2011, through August 25, 2015. The parties

---

[1] Under the fourth sentence of section 405(g), the reviewing district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Under the sixth sentence, "The court may ... remand the case to the Commissioner for further action by the Commissioner and it may at any time order additional evidence to be taken before the Commissioner ...."

1

do not contest the factual statements of plaintiff's medical history.

Plaintiff was born on October 12, 1964. He filed a claim for disability insurance benefits on March 12, 2013, alleging disability onset on September 14, 2011. His claim was denied on August 7, 2013, and upon reconsideration on November 27, 2013. Upon his request, a hearing before an Administrative Law Judge ("ALJ") was held on January 20, 2014. In a decision dated May 29, 2015, the ALJ denied plaintiff's claim for disability benefits. On December 7, 2016, the Appeals Council denied the request for review.

The ALJ found that plaintiff had medically determinable and "severe" impairments of ischemic heart disease, atrial fibrillation, panic disorder, and alcohol abuse in early remission. She found that plaintiff had non-severe impairments of hypertension, diabetes mellitus, obstructive sleep apnea, retinopathy, cataracts and cirrhosis. She found that plaintiff was not "disabled" because he did not have an impairment or combination thereof that meets or medically equals a "listed impairment." She determined that plaintiff had residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. § 404.1567(b), with the exception of frequent balancing, stooping kneeling crouching and climbing of ramps and stairs. She found that plaintiff is limited to occasional crawling and never climbing ladders, ropes or scaffolds; is limited to avoiding concentrated exposure to heat, cold and vibrations; is limited to occasional exposure to unprotected heights and dangerous moving machinery; can operate and drive motor vehicles with corrective lenses; and is limited to simple, routine tasks involving no more than simple, short instructions and simple, work-related

2

decisions with few work place changes. She found that he could perform his past work as an assembly line worker, and alternatively, he was capable of finding work that existed in the national economy.

## DISCUSSION

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function. Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977). A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence"). "Substantial evidence" is less than a preponderance, but "more than a scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); see Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). In so doing, the Court must "review the record as a whole." New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir.

1990). The ALJ need not "reconcile every conflicting shred of medical testimony." Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims. Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner considers if the claimant is, at present, working in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). If not, the Commissioner next considers if the claimant has a medically severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1. If so, the disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him to perform any past work. 20 C.F.R. § 416.920(a)(4)(iv). If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits. Alston, 904 F.2d at 126.

When the reviewing court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision," it may remand for the sole purpose of calculating benefits. Butts v. Barnhart, 399 F.3d 277, 385–86 (2d Cir. 2004). However, the reviewing court may remand the matter to allow the ALJ to further

develop the record, make more specific findings, or clarify his or her rationale. See Grace v. Astrue, 2013 WL 4010271, at *14 (S.D.N.Y.); see also Butts, 399 F.3d at 385–86.

Plaintiff challenges the denial on the grounds that the ALJ failed to develop the record to determine plaintiff's residual functional capacity ("RFC"); erred in her evaluation of the evidence; and made a flawed vocational finding.

RFC Determination

Plaintiff maintains that the ALJ should have obtained the medical source statements from plaintiff's gastroenterologist (Dr. Mario Ricci), cardiologist (Dr. Joseph Corning), primary care physician (Dr. Michael Kalinowski), and the surgeon who performed the hernia surgery in June 2011 (Dr. Peter Romeyn), prior to the alleged disability onset date. Defendant counters that the medical source statements were not necessary because the medical record was sufficiently developed with the treating records and state agency physician review to allow the ALJ to make an informed finding.

"The relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence;" there is no basis for remand where the ALJ's analysis "affords an adequate basis for meaningful judicial review." Cichocki v. Astrue, 729 F.3d 172, 177-78 (2d Cir. 2013); see Mullings v. Colvin, 2014 WL 6632483, at *14 (E.D.N.Y. 2014)(ALJ must articulate specific reasons for the weight given to plaintiff's treating physicians and develop the record as necessary to accord proper weight to medical opinions). The ALJ must properly

5

analyze the reasons that the report is rejected; an ALJ cannot arbitrarily substitute his or her own judgment for competent medical opinion. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Where the administrative record is incomplete or the ALJ has applied improper legal standards, a remand to the Commissioner for further consideration is appropriate. Baldwin v. Astrue, 2009 WL 4931363, at *28 (S.D.N.Y. Dec. 21, 2009). In assessing residual functional capacity, the ALJ must review all of the medical and other evidence of record to determine what the claimant can do in spite of his limitations. 20 C.F.R. § 404.1545, 416.945. The ALJ's evaluation must resolve evidentiary conflicts. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

The ALJ must affirmatively develop the record in light of the ALJ's investigatory rather than adversarial role. See Butts, 388 F.3d at 386. The Social Security Administration rules provide that "[m]edical reports should include ... [a] statement about what you [i.e., the Claimant] can still do despite your impairment(s) .... Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of the medical source statement will not make the report incomplete." Tankisi v. Commissioner of Social Security, 521 F. App'x 29, 34 (2d Cir. 2013). An ALJ is required to seek out additional evidence where there are "obvious gaps" in the administrative record. However, the ALJ need not request a medical opinion from treating physicians where the record medical evidence, including treatment notes, supports the ALJ's RFC determination. Monroe v. Colvin, 676 F. App'x 5, 8-9 (2d Cir. 2017).

Here, the ALJ afforded great weight to the state agency physician who had not examined plaintiff but had reviewed the record to determine that plaintiff could lift 20 pounds occasionally and 10 pounds frequently. The ALJ found that the state agency's conclusions were consistent with the medical record, such as plaintiff's reports to his doctors that he was abstaining from alcohol; his comment to his gastroenterologist that he was doing better post-hospitalization for liver failure, and that he had no chest pain, irregular heartbeats or palpitations; and cardiologist records that plaintiff was stable from a cardiac standpoint, had normal heart rhythm, and managed atrial fibrillation on medication. The ALJ's determination of plaintiff's light work RFC also relied upon the cardiologists' recommendations to plaintiff that he increase aerobic exercise to 30 to 45 minutes most days of week, to do light weight lifting. The ALJ found that plaintiff's testimony that he could drive, had engaged in snow removal, did his laundry and housekeeping, exercised at a fitness center, shopped, had worked construction during times of unemployment supported her RFC determination. The ALJ also questioned whether plaintiff had a disability that prevented employment in light of his collection of unemployment benefits and his effort to look for work during the alleged period of disability.

The Court finds that the ALJ erred by failing to develop the record to include the medical source opinions. Although the medical record is lengthy, plaintiff's capacity to engage in light work employment is not resolved by the treatment notes. His living activities of cooking, doing laundry or housekeeping do not substantiate the finding that plaintiff could engage in employment in a light work capacity. It is unclear from the

7

notes the extent of his exercise at the fitness center, the snow removal (reported in 2013) or the construction work (reported in 2013 and 2014). Further, "when a person chooses to endure pain on his [or her] own accord in order to participate in daily living activities, the ALJ should not hold this endurance against him in determining benefits unless his conduct showed that he is capable of working." Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998).

At a minimum, the ALJ had a duty to develop the record to determine the extent of plaintiff's work restrictions. Plaintiff's numerous medical conditions--including severe ischemic heart disease, atrial fibrillation, and panic disorder--indicate that he may be more limited than the non-examining consultant's assessment.

This is not a case in which the ALJ reached a mistaken conclusion upon review of a complete record. See id, at 82. The extent of plaintiff's restrictions are not clear, and the ALJ failed to obtain the medical source statements that would have clarified plaintiff's restrictions. The Second Circuit has remanded cases for further findings that "plainly help to assure the proper disposition" of the claim with specific instructions and time limitations. Rosa, 168 F.3d at 83 (2d Cir. 1999); Butts, 388 F.3d at 386. The Court will remand the case to the Commissioner for further development of the record with specific instructions and timetable so as not to prejudice plaintiff with delay of the administrative process.

Plaintiff argues that the ALJ should have but failed to consider how his impairments of cervical discectomy and fusion, hernia surgery, joint pain, muscle pain, fatigue, anxiety, insomnia, liver failure and peripheral neuropathy, individually or in

combination, imposed a more than minimal restriction to engage in basic work activities. In light of medical source statements that may provide new information regarding plaintiff's impairment status, the ALJ should re-evaluate the severity of all of plaintiff's medical conditions and his RFC in light of the newly obtained medical source statements.

In determining whether further proceedings should be held, the Court should consider the hardship to the claimant of further delay by the administrative proceedings. Carlantone v. Colvin, 2015 WL 9462956, at *11 (S.D.N.Y. Dec. 17, 2015). Here, plaintiff's claim for disability has been pending for approximately five years. Prolonged administrative proceedings will present a hardship to plaintiff.

Accordingly, the Court will instruct that further proceedings before the ALJ be completed within 150 days of the remand of this matter; if the decision is a denial of benefits, a final decision of the Commissioner shall be rendered within 120 days of plaintiff's appeal from the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for order reversing commissioner's decision [doc.22] is GRANTED to the extent that the case is to be remanded to the Commissioner for further proceedings consistent with this ruling pursuant to sentence six of section 405(g); and the defendant's motion for judgment on the pleadings [doc. 24] to affirm the decision of the Commissioner is DENIED.

The ALJ is instructed to conduct further fact finding proceedings, including requesting the medical source statements from plaintiff's gastroenterologist (Dr. Mario

Ricci), cardiologist (Dr. Joseph Corning), primary care physician (Dr. Michael Kalinowski), and the hernia surgeon (Dr. Peter Romeyn), within 150 days of the remand of this matter; if an appeal is taken, the final decision shall be rendered within 120 days of plaintiff's appeal.   The ALJ is instructed to re-evaluate the severity of plaintiff's medical conditions and his RFC in light of the newly obtained medical source statements.

      The clerk is instructed to remand this matter to the Commissioner.   The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued the Ruling that remanded the case.

                                            /s/Warren W. Eginton_____
                                            Warren W. Eginton
                                            Senior United States District Judge

      Dated this 9th day of March 2018 at Bridgeport, Connecticut.